IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA,<br>Office of the Governor<br>111 East Broad Street<br>Richmond, Virginia 23219<br><br>CITY OF VIRGINIA BEACH,<br>Office of the Mayor<br>Virginia Beach Municipal Center<br>Virginia Beach, Virginia 23456<br><br>                         *Plaintiffs*,<br><br>v.<br><br>DONALD RUMSFELD, in his official capacity as<br>the Secretary of the United States Department of Defense,<br>1000 Defense Pentagon<br>Washington, DC 20301-1000<br><br>                         *Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Commonwealth of Virginia and the City of Virginia Beach (together, "Plaintiffs"), by their undersigned attorneys, bring this action against Donald Rumsfeld in his official capacity as the Secretary of the United States Department of Defense (the "Secretary"), and allege the following:

**NATURE OF ACTION**

1. This is an action for judicial review of an order of the President of the United States adopting the recommendation of the Defense Base Closure and Realignment Commission ("Commission"). This order (the "BRAC Order" or "Order") calls for the realignment of Naval Air Station Oceana ("NAS Oceana") in the City of Virginia Beach, Virginia, by relocating the

East Coast Master Jet Base from NAS Oceana to Cecil Field in Jacksonville, Florida. This action seeks a declaration that the BRAC Order is unlawful on the grounds that the order exceeded and is otherwise in contravention of the authority granted to the President by the Defense Base Closure and Realignment Act of 1990, as amended, 10 U.S.C. §§ 2687 *et seq.* (the "BRAC Statute"), and is contrary to and violates 31 U.S.C. § 1342, 10 U.S.C. § 2676(a), and the Appropriations Clause of the United States Constitution. This action also seeks a permanent injunction prohibiting the Secretary from implementing the BRAC Order.

## JURISDICTION AND VENUE

2.      This action arises under the BRAC Statute, 31 U.S.C. § 1342, 10 U.S.C. § 2676(a), and the Appropriations Clause of the United States Constitution. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rule 57 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

3.      Plaintiffs have a non-statutory right to bring this action to challenge the lawfulness of a Presidential order and to seek to enjoin its implementation by federal agency officials. *See, e.g.*, *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996).

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e)(1) and (2) because the Defendant resides in the District of Columbia and a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.

## PARTIES

5.      Plaintiffs: The Commonwealth of Virginia is a state within the United States of America. The City of Virginia Beach is a municipality within the Commonwealth of Virginia.

6. Each of the Plaintiffs will be harmed by the BRAC Order, which calls for the realignment of NAS Oceana by relocating the East Coast Master Jet Base to Cecil Field in Jacksonville, Florida. The relocation of the Master Jet Base will result in the loss to the Commonwealth and the Cities of Virginia Beach and Chesapeake of approximately 12,000 jobs, as well as associated economic activity, such as procurement of supplies and services, generated by the operation of the jet base. The Commonwealth and the City of Virginia Beach will be directly and adversely affected by, among other circumstances, the loss of tax revenue attributable to the jobs, and other economic activity generated by the jet base, that will be transferred to Jacksonville. The total lost tax revenue to the Commonwealth and the City will exceed $500 million.

7. Defendant Donald H. Rumsfeld is sued in his official capacity as the Secretary of the United States Department of Defense. The Secretary's offices are located at 1000 Defense Pentagon, Washington, D.C., 20301-1000. The Secretary is obligated by law to implement base closure and realignment orders issued by the President pursuant to the BRAC process.

## THE BASE CLOSURE AND REALIGNMENT PROCESS

8. The stated purpose of the BRAC Statute "is to provide a fair process that will result in the timely closure and realignment of military installations inside the United States." 10 U.S.C. § 2687, Section 2901.

9. The BRAC Statute establishes a detailed and clearly-defined procedure for effecting the closure and/or realignment of such military installations. The process begins with the Secretary submitting a force-structure plan for the Armed Forces based on the assessment by the Secretary of the probable threats to national security. 10 U.S.C. § 2687, Section 2903(a)(1).

The Secretary is further responsible for establishing the criteria to be used in making recommendations for the closure or realignment of military installations.

10. The Secretary must publish in the Federal Register and transmit to the Congressional defense committees and to the Commission a list of the military installations that the Secretary recommends for closure or realignment based on the force structure plan and the closure and realignment criteria. 10 U.S.C. § 2687, Section 2903(c).

11. After receiving the recommendations from the Secretary, the Commission is required to conduct public hearings on such recommendations. The Commission then shall transmit to the President of the United States a report containing the Commission's findings and conclusions based on a review and analysis of the recommendations made by the Secretary, together with the Commission's recommendations for closures and realignments of military installations inside the United States. 10 U.S.C. § 2687, Section 2903(d)(2)(A).

12. The Commission may make changes to the recommendations of the Secretary regarding closure or realignment of military installations only if the Commission determines that the Secretary deviated substantially from the force structure plan and final criteria in making his recommendations. 10 U.S.C. § 2687, Section 2903(d)(2)(B).

13. Any recommendations made by the Commission, whether they constitute changes to the Secretary's recommendations or otherwise, may not take into account for any purpose any "advance conversion planning" undertaken by an affected community with respect to the anticipated closure or realignment of a military installation. 10 U.S.C. § 2687, Section 2903(d)(2)(E). The BRAC Statute defines "advance conversion planning" to "(i) … include community adjustment and economic diversification planning undertaken by the community before an anticipated selection of a military installation in or near the community for closure or

realignment; and (ii) may include the development of contingency redevelopment plans, plans for economic development and diversification, and plans for the joint use (including civilian and military use, public and private use, civilian dual use, and civilian shared use) of the property or facilities of the installation after the anticipated closure or realignment." 10 U.S.C. § 2687, Section 2903(c)(3)(C).

14. The BRAC Statute requires the Commission to explain and justify in its report to the President any recommendation made by the Commission that is different from the recommendations made by the Secretary. The Commission shall transmit a copy of such report to the Congressional defense committees on the same date on which it transmits its recommendations to the President. 10 U.S.C. § 2687, Section 2903(d)(3).

15. The President is responsible for reviewing the recommendations of the Commission. If the President approves all of the Commission's recommendations, he then shall transmit a copy of such recommendations to Congress, together with a certification of such approval. Alternatively, should the President disapprove, in whole or in part, the recommendations of the Commission, he shall transmit to the Commission and to Congress the reasons for such disapproval. In response, the Commission then shall transmit to the President a revised list of recommendations for the closure and realignment of military installations. If the President then approves all of the revised recommendations of the Commission, the President shall transmit a copy of such revised recommendations to Congress, along with a certification of such approval. If the President fails to approve and certify the Commission's recommendations (or the revisions thereto), then the process for closing and/or realigning military installations terminates. 10 U.S.C. § 2687, Section 2903(e)(1)-(5).

16.     The Secretary shall close all military installations recommended for closure by the Commission and approved by the President.  The Secretary is further required to realign all military installations recommended by the Commission and approved by the President. 10 U.S.C. § 2687, Section 2904(a)(1)-(2).  However, the Secretary may not carry out any such closure or realignment if a joint resolution is enacted by Congress disapproving such recommendations. U.S.C. § 2687, Section 2904(b).

## THE BRAC ORDER

17.     On May 13, 2005, the Secretary submitted his recommendations for closure and realignment of military installations to the BRAC Commission.  Out of 318 bases, the Secretary recommended that 33 military installations be closed and that 29 others be realigned.  The Secretary did not recommend any closure or realignment with respect to NAS Oceana.

18.     On July 19, 2005, the Commission voted to add eleven military installations for consideration for closure, realignment or further realignment.  NAS Oceana was among the installations added to the list.

19.     On July 28, 2005, Anthony J. Principi, Chairman of the Commission, wrote to the Honorable Jeb Bush, Governor of Florida, asking him whether he supported the "concept" of relocating NAS Oceana to "the present Cecil Field complex."  In his letter, Chairman Principi noted that, during the Commission's Regional Hearing in New Orleans on July 22, 2005, "several members of the Florida delegation" had suggested such a move.  Chairman Principi further noted in his letter that if Governor Bush also supported this proposed move, the Commission "would appreciate [his] written comments regarding this concept in order for the present Cecil Field complex to be considered as a potential alternative site.  The Department of

6

Defense and the Navy would require the removal of all industrial and commercial activities (non-[Department of Defense] related) presently operating at the Cecil Field complex . . . ."

20. By letter of August 1, 2005, to Chairman Principi, Governor Jeb Bush "emphasize[d] the State of Florida's overwhelming support that former NAS Cecil Field be considered" as a replacement for NAS Oceana. In his letter, Governor Bush acknowledged that NAS Cecil Field was closed in 1999. He also pointed out that "[a]pproximately $133 million has been invested in Cecil Field through federal, state and local grants since 1999 to upgrade the control tower, eight hangers, utilities, drainage and roads throughout the complex. The City of Jacksonville has secured $130 million in funding for a high-speed access road to Interstate 10 to provide Cecil Field with outstanding accessibility." Governor Bush further promised his commitment to "accelerating this project if necessary . . . ." and "to work intimately with the Florida Legislature to address whatever assistance the State can provide to ensure this proposal is operationally and financially feasible for all parties involved."

21. On August 5, 2005, Chairman Principi responded to Governor Bush and stated that he appreciated the Governor's letter regarding Cecil Field's viability as an alternative to NAS Oceana. He also noted that the Governor's letter "provided [the Commission] with much needed details regarding the feasibility of such an option and state and local support behind it." He invited the Governor to meet informally with members of the Commission on August 11, 2005, in order to "help the Commissioners [and the Chairman] understand Florida's position prior to [the Commission's] final deliberations now scheduled for the week of August 22nd."

22. On August 24, 2005, the Commission voted to recommend to the President that the East Coast Master Jet Base be relocated to Cecil Field, Florida – despite the fact that Cecil Field is not currently, and has not been since at least 1999, a "military installation" as defined by

the BRAC Statute. *See* 10 U.S.C. § 2687, Section 2910. In July 1993, the Commission recommended the closure of the Naval Air Station at Cecil Field in Jacksonville, Florida ("NAS Cecil Field"). NAS Cecil Field was officially closed on or about September 30, 1999. As part of this closure, virtually all of the land formerly owned by the Navy at NAS Cecil Field was transferred to local entities such as the City of Jacksonville, the Jacksonville Airport Authority, and the Jacksonville Economic Development Commission.

23. The Commission's recommendation to realign NAS Oceana by relocating the East Coast Master Jet Base is expressly subject to two conditions: First, the Commonwealth of Virginia, the City of Virginia Beach, and the City of Chesapeake, Virginia, must fail to take certain actions by March 31, 2006, to address encroachment around NAS Oceana. Second, the State of Florida and the City of Jacksonville must, by December 31, 2006, turn over title to Cecil Field in fee simple to the Department of Defense, and appropriate sufficient funds to relocate commercial tenants currently occupying Cecil Field and to secure public-private ventures for all personnel housing required by the Navy to accomplish the relocation of the East Coast Master Jet Base. In each case, the Inspector General of the Department of Defense is charged with responsibility for certifying whether these conditions are met.

24. The Commission submitted its Final Report to the President on September 8, 2005, including the recommendation to realign NAS Oceans by relocating the East Coast Master Jet Base to Cecil Field.

25. The President approved the Commission's Final Report, including the recommendation to realign NAS Oceana by relocating the East Coast Master Jet Base to Cecil Field, and transmitted the Commission's recommendations to Congress, along with a certification of his approval thereof, on September 15, 2005.

26.     Congress took no action within the time provided under the BRAC Statute to disapprove of the Commission's recommendations. As a result, unless the order is ruled to be invalid, the Secretary is now obligated by the BRAC Statute to implement the BRAC Order (subject to the conditions stated therein).

## FIRST CAUSE OF ACTION

**(Action in excess of statutory authority; realignment of a military function to a location that is not an existing military installation.)**

27.     The Plaintiffs reallege and incorporate all other allegations contained in this Complaint as if fully set forth herein.

28.     The President's authority under the BRAC Statute is limited to closing or realigning military installations or functions in accordance with specified procedures. 10 U.S.C. § 2687, Sections 2903(a)(2), (b)(2), (c)(1)-(6), (d)(2)(A), (d)(2)(D). The BRAC Statute does not authorize the President to open or re-open a military installation or to realign a military function to a location other than an existing military installation.

29.     The BRAC Statute prohibits the Commission from taking into account any advance conversion planning undertaken by an affected community with respect to the anticipated closure or realignment of a military installation, including advance conversion planning that necessarily would be required to realign a military function to a location that is not an existing military installation. 10 U.S.C. § 2687, Sections 2903(c)(3)(B), (d)(2(E).

30.     The BRAC Statute defines the term "military installation" as "a base, camp, post, station, yard, center, homeport facility for any ship, or other activity under the jurisdiction of the United States, including any leased facility. Such term does not include any facility used primarily for civil works, rivers and harbor projects, flood control, or other projects not under the

9

primary jurisdiction or control of the Department of Defense." 10 U.S.C. § 2687, Section 2910(4).

31. Cecil Field is not a "military installation" as defined by the BRAC Statute. Cecil Field is not presently under the jurisdiction of the United States, or under the primary jurisdiction or control of the Department of Defense. Cecil Field is a former military installation that was closed in 1999, pursuant to a prior base closure and realignment process.

32. The President therefore had no authority under the BRAC Statute to order the relocation of the East Coast Master Jet Base to Cecil Field.

33. Because the President had no authority under the BRAC Statute to order the relocation of the East Coast Master Jet Base to Cecil Field, the BRAC Order should be declared unlawful, and the Secretary should be permanently enjoined from implementing the order.

## SECOND CAUSE OF ACTION

**(Action in excess of statutory authority; delegation of decision making under the BRAC Statute to state and local governments.)**

34. The Plaintiffs reallege and incorporate all other allegations contained in this Complaint as if fully set forth herein.

35. The BRAC Statute, within a detailed procedural framework, assigns to each of the Secretary, the BRAC Commission, and the President clear tasks to be completed and decisions to be made during the base closure and realignment process. The BRAC Statute's procedures and its decision making assignments were designed to effectuate Congress's intent to remove political considerations from the base closure and realignment process.

36. The BRAC Statute does not authorize the President to delegate the decision as to whether a military installation should be closed or realigned. That decision-making authority rests solely with the President. 10 U.S.C. § 2687, Sections 2903(e).

37. Under the BRAC Order, the decision whether to realign NAS Oceana is dependent on certain discretionary actions by Commonwealth of Virginia, the City of Virginia Beach, the State of Florida, the City of Jacksonville, and other state and local governmental entities. The BRAC Order thus effectively delegates to these state and local governmental entities the President's responsibility for striking the proper balance between state and local interests and the operational requirements of the United States military.

38. For the foregoing reasons, the BRAC Order should be declared unlawful, and the Secretary should be permanently enjoined from implementing the order.

### THIRD CAUSE OF ACTION

**(Action in excess of statutory and Constitutional authority; improper augmentation of appropriations.)**

39. The Plaintiffs reallege and incorporate all other allegations contained in this Complaint as if fully set forth herein.

40. It is the responsibility of the Defendant and the military departments to acquire such interests in property as may be necessary for military operations.

41. The Appropriations Clause of the United States Constitution provides that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7.

42. Under the Appropriations Clause, the executive and federal agencies are prohibited from circumventing Congress's power to control appropriations for federal purposes.

43. Based on this same principle, section 1342 of title 31 of the United States Code prohibits officers of the United States Government, such as Defendant and the Secretary of the Navy, from accepting voluntary services.

44. In 2004, 2005, and 2006 combined, Congress appropriated approximately $24,00,000 for Navy construction and land acquisition projects at NAS Oceana. The Defendant and the Navy are authorized to use such appropriations for condemnation of any interest in land needed for military bases and training, including interests in land to ensure compatibility with the Department of the Navy's Air Installation Compatibility Use Zones (AICUZ) Guidelines. 10 U.S.C. § 2663. Since the enactment of the AICUZ Program in 1972, the Department of the Navy has used federal appropriations to purchase property interests in at least 12,461 acres around and adjacent to NAS Oceana from private landowners.

45. These appropriations represent the program level at which Congress intends the Department of Defense and the Department of the Navy to operate with respect to construction and land acquisitions at and around NAS Oceana.

46. The BRAC Order requires the Plaintiffs, among other things, to expend no less than $15,000,000 per year in perpetuity to implement a program to purchase and condemn incompatible use properties within the Accident Potential Zone 1 at NAS Oceana as a condition of averting the relocation of the East Coast Master Jet Base to Cecil Field.

47. Such expenditures by the Plaintiffs would inure solely to the benefit of the Department of Defense and the Department of the Navy and would relieve these federal agencies from discharging certain program responsibilities for which they otherwise would require funds appropriated by Congress.

48. The BRAC Order therefore would result in an unauthorized augmentation of appropriations in violation of the Constitution and the acceptance of voluntary services in violation of 31 U.S.C. § 1342.

49.    For the foregoing reasons, the BRAC Order should be declared unlawful, and the Secretary should be permanently enjoined from implementing the order.

## FOURTH CAUSE OF ACTION

**(Violation of 10 U.S.C. § 2676(a); acquisition of real property without authorization)**

50.    The Plaintiffs reallege and incorporate all other allegations contained in this Complaint as if fully set forth herein.

51.    Section 2676(a) of title 10 of the United States Code prohibits military departments from acquiring real property not already owned by the United States unless expressly authorized by law.

52.    The BRAC Order would require the Department of Defense to acquire Cecil Field in order to relocate the East Coast Master Jet Base from NAS Oceana.

53.    Congress has not expressly authorized the Department of Defense to acquire Cecil Field, either under the BRAC Statute or otherwise.

54.    The implementation of the BRAC Order therefore would violate 10 U.S.C. § 2676(a).

55.    For the foregoing reasons, the BRAC Order should be declared unlawful, and the Secretary should be permanently enjoined from implementing the order.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully pray that this Court issue an order granting the following relief:

A.    A declaration that the BRAC Order exceeds statutory authority and is otherwise contrary to law;

    B.    A permanent injunction prohibiting the Secretary of Defense or the Department of Defense from implementing the BRAC order;

    C.    An award of attorneys' fees and the costs and expenses of this litigation; and

    D.    Such other relief as the Court may deem appropriate.

Dated: November 7, 2006

Respectfully submitted,

_____
Eric J. Murdock (D.C. Bar No. 443194)
David J. DePippo (D.C. Bar No. 484781)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 955-1500

Counsel for Plaintiffs
**COMMONWEALTH OF VIRGINIA**
**CITY OF VIRGINIA BEACH**

Of Counsel:

Robert F. McDonnell
Attorney General
Commonwealth of Virginia
900 East Main Street
Richmond, Virginia 23219
(804) 786-3808

Leslie L. Lilley
City Attorney
Office of the City Attorney
Virginia Beach Municipal Center
Virginia Beach, Virginia 23456-9115
(757) 385-4531

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Commonwealth of Virginia, City of Virginia Beach | Donald Rumsfeld, in his official capacity as the Secretary of the United States Department of Defense |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Eric J. Murdock, David J. DePippo
Hunton & Williams LLP; 1900 K Street, N.W.;
Washington, D.C. 20006
(202) 955-1500

CASE NUMBER 1:06CV01907
JUDGE: Ricardo M. Urbina
DECK TYPE: Administrative Agency Review
DATE STAMP: 11/07/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ● C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action pursuant to 10 USC 2687, et seq., 31 USC 1342, 10 USC 2676, & the U.S. Constitution to enjoin agency implementation of Presidential order

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND: YES ☐ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☒   If yes, please complete related case form.

DATE 11/7/2006    SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.